# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH WAYNE KRANTZ,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>D. ADAMS, Warden,<br><br>　　　　　Respondent.<br>_____/ | CV F   06-00877 LJO DLB HC<br><br>FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS<br><br>[Doc. 1] |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## BACKGROUND

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation ("CDCR") pursuant to a valid judgment and conviction in the Butte County Superior Court, for kidnap for robbery and attempted murder. (Exhibit 1, Abstract of Judgment.) Petitioner was sentenced to nine years for the attempted murder conviction, plus a three-year enhancement for causing great bodily injury. In addition, Petitioner was sentenced to life on the kidnap for robbery conviction. Petitioner's life term began on August 17, 1991.

In the instant petition, Petitioner does not challenge the validity of the state court judgment; rather, he challenges the July 29, 2003, decision by the Board of Parole Hearings ("BPH") denying him parole at his fourth parole consideration hearing. (Exhibit 4, Transcript of Hearing.)

On June 10, 2004, Petitioner filed a petition for writ of habeas corpus in the Butte County Superior Court contending that there was not sufficient evidence to support the BPH's decision. (Exhibit 4.) On June 25, 2004, the Court denied the petition stating that Petitioner failed to establish a prima facie case for relief. (Exhibit 5.)

On July 27, 2004, Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal, Third Appellate District. (Exhibit 6.) The petition was summarily denied on July 29, 2004. (Exhibit 7.)

Petitioner filed a petition for writ of habeas corpus in the California Supreme Court on August 19, 2004. (Exhibit 8.) The petition was denied on June 29, 2005, with citations to In re Dannenberg, 34 Cal.4th 1061 (2005), In re Rosenkrantz, 29 Cal.4th 616 (2002), In re Robbins, 18 Cal.4th 770 (1998), and People v. Duvall, 9 Cal.4th 464, 474 (1995). (Exhibit 9.)

Petitioner filed the instant federal petition for writ of habeas corpus on July 11, 2006. (Court Doc. 1.) Respondent filed an answer to the petition on October 17, 2007, and Petitioner filed a traverse on November 21, 2007. (Court Docs. 20, 21.)

## STATEMENT OF FACTS[1]

Petitioner and Vincent Poma planned the kidnap and robbery of a furniture store owner. They cased the two furniture stores and home of the owner. Specifically, on January 12, 1981, while Petitioner and Poma were armed with guns and wearing latex surgical gloves, they confronted the victim at his apartment complex and demanded that he get into the car with them. They drove to the furniture store and demanded to see the safe. After ransacking the store, they could not locate a safe. However, Petitioner found approximately $120 in a cash box and Poma located a small amount of money from the victim's pocket. After failing to find a safe, Poma hit the victim over the head approximately four times with a hammer. Petitioner then cut the victim's throat with a razor blade, and left him for dead. The victim was discovered early the next morning as he was lying in a pool of blood. He was rushed to the hospital, where surgery was performed, and he ultimately survived the attack.

---

[1] This information is taken from the Probation Officer's Report, attached as Exhibit 2, to Answer, at 4-5.

DISCUSSION

I.  Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging his underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,

*quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state

1  court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's
2  interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*,
3  537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

4  II.     Review of Claims

5         A parole release determination is not subject to all of the due process protections of an
6  adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see
7  also Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 12 (1979)
8  (explaining that due process is flexible and calls for procedural protections that particular
9  situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution,
10 the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated,
11 even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of
12 Parole, 833 F.2d 1389, 1390 (9th Cir.1987).  At a state parole board proceeding, an inmate is
13 entitled to the following procedural protections: 1) the inmate must receive advance written
14 notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to
15 be heard," Greenholtz, 442 U.S. at 16; and 3) if the inmate is denied parole, the inmate must be
16 told why "he falls short of qualifying for parole." Id.

17        As to these procedural protections, as Respondent submits, Petitioner was provided all
18 that is required.  Petitioner was provided with advance notice of the hearing, an opportunity to
19 submit materials for the Board's consideration, an opportunity to be heard during the hearing,
20 representation by his attorney, and a written decision explaining the reasons that parole was
21 denied.

22        "In Superintendent, Mass. Correc. Inst. v. Hill, the Supreme Court held that 'revocation
23 of *good time* does not comport with 'the minimum requirements of procedural due process,'
24 unless the findings of the prison disciplinary board are supported by *some evidence* in the
25 record.'  472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)."
26 Sass v. California Board of Prison Terms, 461 F.3d 1123, 1128 (9th Cir.2006) (italics added).
27 Irons v. Carey, 505 F.3d 846, 851 (9th Cir.2007), *quoting* Hill, 472 U.S. at 457 ("We have held
28 that 'the Supreme Court ha[s] clearly established that a parole board's decision deprives a

prisoner of due process with respect to this interest if the board's decision is not supported by 'some evidence in the record,' or is 'otherwise arbitrary.'"). In assessing "whether a state parole board's suitability determination was supported by 'some evidence' in a habeas case, our analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state." Irons, 505 F.3d at 851. Here, the Court must look to California law and review the record. In reviewing the record and determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence. Sass, 461 F.3d at 1128.

California law provides that after an inmate has served the minimum term of confinement required by statute, the Board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for" the prisoner. Cal. Penal Code § 3041(b). "[I]f in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison," the prisoner must be found unsuitable and denied parole. Cal. Code Regs. tit. 15, § 2402(a). The Board decides whether a prisoner is too dangerous to be suitable for parole by applying factors it has set forth in the California Code of Regulations.

At Petitioner's fourth parole hearing in 2003, the BPH relied on several factors in denying parole including Petitioner's commitment offense, escalating pattern of criminal conduct, failure of previous grants of parole, unstable social history, misconduct during incarceration, and opposition by the District Attorney. (See Exhibit 4, at 50-54.)

The first and primary factor the BPH relied on was the fact that the kidnaping for robbery and attempted murder offense was carried out in a dispassionate and calculated manner.[2]

---

[2] Pursuant to Title 15, of the California Code of Regulations, Section 2402(c)(1) sets forth circumstances tending to demonstrate unsuitability for parole regarding the committed offense. The factors to be considered include:
  (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
  (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
  (C) The victim was abused, defiled or mutilated during or after the offense.
  (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for

1  (Exhibit 4, 50-51; Cal. Code Regs. tit. 15, § 2402(c)(1)(B), (C).)  "Some evidence" clearly
2  supports the BPH's finding.  Under California law, the commitment offense and past convicted
3  offenses alone provide a sufficient basis to deny parole.  In re Dannenberg, 34 Cal.4th at 1061,
4  1095 (2005); Cal. Penal Code § 3041(b).  In order to find that an offense was committed "in an
5  especially heinous, atrocious or cruel manner" there must be some evidence that the "violence
6  and viciousness of the inmate's crime" is greater than that which is "minimally necessary to
7  convict [the defendant] of the offense for which he is confined. (Cal. Code Regs. tit. 15, §
8  2402(c)(1); In re Dannenberg, 34 Cal.4th 1061, 1095 (2005).

9       Here, there is clearly "some evidence" to support the BPH's finding that the commitment
10  offense was carried out in an especially cruel and callous manner.  Specifically, as stated by the
11  BPH, the victim was kidnaped and taken from his home to his place of business at gunpoint in an
12  attempt to obtain money from a safe.  Petitioner and his crime partner ransacked the business and
13  found $120 in a cash box and a small amount of money from the victim's pocket.  Out of
14  frustration in failing to find a safe deposit box, the victim was hit over the head approximately
15  four times with a hammer.  Petitioner then cut the victim's throat with a razor blade, and he was
16  left to die.  Luckily the victim was discovered the next morning and taken to the hospital, where
17  he underwent surgery and ultimately survived.  But for fortune of good luck, the victim could
18  very likely have died.  These factual circumstances clearly support the BPH's finding that the
19  commitment offense was carried out in an especially cruel and callous manner.

20       The BPH further found that Petitioner's criminal propensity was not subdued, as in 1989
21  he committed a vicious assault on another inmate by stabbing him numerous times.  In addition,
22  he failed to profit from society's previous attempts to correct his criminality.  Petitioner was
23  previously committed to the Youth Authority for a conviction of robbery with use of a firearm;
24  he was released on parole in February 1980. (Exhibit 4, at 13, 17.)  Further, the BPH pointed out
25  that Petitioner admitted to a spree of numerous armed robberies from the date of release on

---

27      human suffering.
    (E) The motive for the crime is inexplicable or very trivial in relation to the offense.
28  Cal.Code Regs. tit. 15, § 2402(c)(1)(A)-(E).

parole to the commission of the instant offense.  (Id. at 40.)  "Some evidence" supports the BPH's finding and this was properly considered as a circumstance tending to indicate Petitioner's unsuitability for parole.  See Cal.Code Regs. tit. 15, § 2402(b), (c)(6).

The BPH stated that Petitioner had an unstable social history which may be properly considered as a circumstance tending to indicate unsuitability for parole.  See Cal. Code Regs. tit. 15, § 2402(c)(3).  The BPH cited the fact that after Petitioner's parents divorced in 1976, it appeared that he suffered as a consequence of not having both parents in the home, as evidenced by his subsequent criminal activity and substance abuse.  (Exhibit 4, at 17-20.)

Finally, the BPH considered the District Attorney's opposition to parole.  This was properly considered pursuant to California Penal Code section 3042(a) and (f)(3), and Cal. Code Regs. tit. 15, § 2402(b).

The BPH also considered the factors in support of a finding of suitability and commended Petitioner for his recent improvement in programming, positive progress in reducing his level of dangerousness as reflected in the psychiatric report, and progress on parole plans including marketable skills and efforts in seeking to get a job.  See  Cal. Code Regs. tit. 15, § 2402(d).  However, on balance, the BPH found that these factors did not outweigh the finding of unsuitability.  The BPH made the specific finding that Petitioner "needs to continue to involve himself in positive kinds of programs; self-help programs and other kinds of programs that's available to him.  The kinds of programs that will enable him to face, discuss, understand and cope with stress in a non-destructive manner.  Until enough progress is made, the prisoner continues to be unpredictable and a threat to others."  (Exhibit 4, at 52-52.)

Petitioner contends his attorney lead him to believe that pursuant to his plea agreement he would be released after approximately eleven years of imprisonment.  Although Petitioner recognizes that his plea agreement did not specifically provide for his release after a certain number of years were served, Petitioner believes that his strong rehabilitation and conduct during his imprisonment supports his release and fulfills his obligation pursuant to the plea.  Petitioner's claim is without merit.  As Petitioner implicitly concedes, he has presented nothing to show he was promised he would be released after a certain amount of time.  Indeed, his sentence was for

life *with* the *possibility* of parole. See Exhibit 1. Moreover, Petitioner has not been denied parole forever, rather the BPH set another hearing one year out and encouraged Petitioner to continue making positive progress so that he may one day be eligible for parole.

The BPH's findings are supported by "some evidence" and it cannot be said that the state court's resolution of Petitioner's claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence before the state court."

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be DENIED; and
2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **May 29, 2008**                    /s/ **Dennis L. Beck**
                                    UNITED STATES MAGISTRATE JUDGE